IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID GENE LEWIS,
     Petitioner,

v.                            Case No.  3:11cv260/LC/CJK

MICHAEL D. CREWS,[1]
     Respondent.
_____

## ORDER and
## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C.
§ 2254 (doc. 1) and supporting memorandum (doc. 2).  Respondent filed an answer
(doc. 17), submitting relevant portions of the state court record (doc. 23).  Petitioner
replied (doc. 21).  The matter is referred to the undersigned magistrate judge for
report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R.
72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned
concludes that no evidentiary hearing is required for the disposition of this matter.
Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District
Courts.  The undersigned further concludes that the pleadings and attachments before
the Court show that petitioner is not entitled to federal habeas relief, and that the

---

[1]Michael D. Crews succeeded Kenneth S. Tucker as Secretary of the Florida Department of
Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by Amended Information filed in the Circuit Court for Walton County, Florida, with Arson (Count 1) and Grand Theft Auto (Count 2). (Doc. 23, Ex. A, p. 3).[2] Petitioner went to trial and was found guilty by jury verdict of both counts, as charged. (*Id.*, p. 108). On August 2, 2007, petitioner was adjudicated guilty and sentenced to concurrent terms of fifteen years imprisonment on Count 1 and five years imprisonment on Count 2. (*Id.*, pp. 181-86). Petitioner's judgment of conviction was affirmed on direct appeal on July 31, 2008. *Lewis v. State*, 986 So. 2d 606 (Fla. 1st DCA 2008) (Table) (copy at Ex. H).

On October 24, 2008, petitioner filed a motion to correct sentence under Florida Rule of Criminal Procedure 3.800, seeking additional jail credit. (Ex. I-2). The court struck the motion without prejudice to petitioner filing, within thirty days, either a "proper and signed" amended motion under Rule 3.800, or a "sworn proper" motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*). Petitioner filed an amended Rule 3.800 motion on November 24, 2008, which again sought additional jail credit. (*Id.*). Petitioner's motion was granted on January 16, 2009, and petitioner was awarded an additional 60 days of jail credit. (*Id.*).

On March 23, 2009, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. J, pp. 1-69). The court struck petitioner's motion without prejudice to petitioner filing an amended motion within thirty days, finding that petitioner had improperly "mixed his memorandum of law within his rule 3.850 motion." (Ex. K, pp. 110-19). Petitioner filed an amended

---

[2]All references to exhibits will be to those provided at Doc. 23, unless otherwise noted.

motion on March 18, 2010. (*Id*., pp. 219-90). The trial court denied relief without an evidentiary hearing. (*Id*., Ex. L, pp. 432-36). The Florida First District Court of Appeal ("First DCA") per curiam affirmed without written opinion on November 10, 2010. *Lewis v. State*, 48 So. 3d 840 (Fla. 1st DCA 2010) (Table) (copy at Ex. O). The mandate issued December 7, 2010. (Ex. P).

Petitioner filed his federal habeas petition in this Court on May 29, 2011. (Doc. 1, p. 1). The petition presents four grounds for relief, all grounded in petitioner's contention that he was deprived of effective assistance of trial counsel. (*Id*.). Respondent argues that petitioner is not entitled to federal habeas relief because one claim is procedurally barred and without merit, and the remaining claims are meritless. (Doc. 17).

## LEGAL STANDARDS

### Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S.

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when

the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."
*Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate

court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

<u>Clearly Established Federal Law Governing Claims of Ineffective Assistance of Trial Counsel</u>

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) the Supreme Court set out a two-part inquiry for ineffective assistance claims. A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. 466 U.S. at 687, 104 S.Ct. 2052. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the

presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

## DISCUSSION

Ground One    "Ineffective Assistance of Counsel for Failing to Challenge and Move for Mistrial Based on Juror Misconduct" (Doc. 1, p. 4).

Petitioner alleges the following in support of this claim:

> Lyetta Poston had filed a complaint-out against the petitioner, prior to the case at bar. Poston's complaint led to petitioner's arrest, in an unrelated case. Even though, Ms. Poston had been specifically questioned whether or not she knew any of the parties or if she had ever been the victim of a crime. Ms. Poston failed to disclose the requested information during voir dire or thereafter. Poston's concealment of highly material facts allowed her to be seated on the jury panel. And ultimately, allowed her to participate in rendering a guilty verdict against the petitioner.

(Doc. 1, continuation page 4(A), ECF p. 7). Petitioner asserts that he did not recognize Juror Poston during voir dire or jury selection, but recognized her after the trial began. (*Id*.). Petitioner states that he informed trial counsel that Juror Poston "had had the defendant arrested regarding a prior incident", and that trial counsel responded to the effect that there was nothing she could do because petitioner was not taking the witness stand. (*Id*.; *see also* Ex. K, p. 226). Petitioner argues that trial counsel's failure to act on his allegation of juror misconduct constituted ineffective assistance, and that counsel should have "challenge[d] Juror Poston's misconduct and move[d] for a mistrial". (Doc. 1, continuation page 4(A), ECF p. 7).

Petitioner presented this claim to the state courts in his amended Rule 3.850 motion as Ground One. (Ex. K.). The state court denied relief for the reasons (including record attachments) set forth in the State's Response to petitioner's amended postconviction motion. (Ex. L, p. 434 (adopting and incorporating as the court's findings of fact and conclusions of law the "State's Response to Defendant's Amended Rule 3.850 Motion" (copy at Ex. L, pp. 313-429))). The postconviction court found (through adoption and incorporation of the State's Response) that petitioner admitted he did not recognize Juror Poston until after jury selection was completed, that petitioner participated in jury selection and responded affirmatively when asked if the jurors selected were the jurors he selected, and that petitioner did not object to Juror Poston being on the jury. (Ex. L, pp. 314-16). The postconviction court further found that petitioner could have, but did not raise an objection to Juror Poston at the conclusion of trial when the trial court asked petitioner whether he desired to call any witnesses or testify. (*Id*.). The postconviction court also discussed petitioner's failure to establish a reasonable likelihood of success on a motion

asserting juror misconduct, finding that petitioner provided no evidence that Juror Poston recognized him or that she swayed the rest of the jury in any way. In regard to the latter, the court noted that the jurors were asked during jury selection if any of the other jurors would be able to sway their ability to give the parties a fair trial, and all jurors, even those who knew Juror Poston, said they would not be influenced by other jurors. (*Id.*). Additionally, after the verdict the trial court polled the members of the jury and all jurors indicated that the verdict given was the verdict of the jury. The postconviction court found as a final matter that the record belied petitioner's assertion that he informed trial counsel during trial of Juror Poston's alleged misconduct, because at sentencing when petitioner raised several issues concerning his dissatisfaction with trial counsel's performance, petitioner did not mention any issue involving juror misconduct or Juror Poston, and did not assert that he informed trial counsel of any such issue. (*Id.*). The First DCA summarily affirmed the denial of postconviction relief.

Petitioner argues that the state court's denial of relief was unreasonable, because the state court record does not conclusively rebut his claim. Petitioner maintains that the factual findings upon which the state court relied do not rebut his assertions that Juror Poston concealed her prior contact with petitioner, and that petitioner alerted trial counsel to Juror Poston's misconduct. (Doc. 2, p. 3). Petitioner further argues that the state court's denial of relief was improper, because the record "do[es] not demonstrate that counsel lacked actual knowledge of petitioner's concerns with Juror Poston." (Doc. 1, continuation page 4(A), ECF p. 9).

The state court reasonably concluded that petitioner failed to establish deficient performance and prejudice under *Strickland*. Petitioner's allegation that during trial

he told counsel of his prior contact with Juror Poston is belied by the fact that petitioner did not relate this allegation when the trial judge directed him during a pre-sentencing hearing to enumerate all of his complaints about counsel's performance. (Ex. E).  Even accepting as true petitioner's allegation that he informed defense counsel during trial that Juror Poston was the cause of petitioner's prior arrest on an unrelated charge, petitioner has not established that counsel responded unreasonably to that information.  Petitioner alleges that counsel advised him, essentially, that the defense could not obtain a remedy for petitioner's allegation of juror misconduct unless petitioner was willing to take the stand and testify about it.  Counsel's advice was an accurate representation of the law and was not objectively unreasonable. Assuming to petitioner's benefit that the trial court would not have found petitioner's suggestion of juror bias/misconduct frivolous, the remedy for petitioner's allegation would have been an evidentiary hearing in which petitioner would have been required to provide evidence of Juror Poston's bias/misconduct so that the trial court could determine the circumstances of what transpired, the impact on the juror(s), and whether or not it was prejudicial.  *See Remmer v. United States*, 347 U.S. 227, 229-30, 74 S. Ct. 450, 98 L. Ed. 654 (1954); *Smith v. Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 945, 71 L. Ed. 2d 78 (1982) ("This Court has long held that the remedy for allegations of juror partiality is *a hearing in which the defendant has the opportunity to prove actual bias*.") (emphasis added); *Chandler v. Florida*, 449 U.S. 560, 101 S. Ct. 802, 66 L. Ed. 2d 740 (1981) (holding that where a defendant raises a claim of juror prejudice, "the appropriate safeguard against such prejudice is the *defendant's right to demonstrate* that the [circumstance underlying the allegation of prejudice] compromised the ability of the particular jury that heard the case to adjudicate

fairly.") (emphasis added); *Roberts v. State*, 66 So. 3d 401, 403 (Fla. 4th DCA 2011) ("When suggestion of juror bias is not frivolous, the court should make 'an adequate inquiry' into whether the bias existed and whether it was prejudicial.") (*quoting Gonzalez v. State*, 511 So. 2d 700, 701 (Fla. 3d DCA 1987)). Given the procedure for addressing a defense claim of juror misconduct or bias, and given petitioner's failure to inform counsel that he was willing to testify under oath to his alleged prior contact with Juror Poston, trial counsel was not unreasonable for failing to pursue the matter further. The state court did not unreasonably apply *Strickland* when it rejected petitioner's claim for failure to establish deficient performance.

Moreover, as the postconviction court reasonably concluded, petitioner fails to establish a reasonable probability that a motion (either to discharge Juror Poston or for a new trial) based on juror misconduct would have been successful. Petitioner's theory underlying his claim of juror misconduct rests on the assumption that Juror Poston recognized him and deliberately concealed her prior contact with him. Petitioner offers nothing but his own speculation to support this assumption. Petitioner's vague description of his alleged prior contact with Juror Poston – that he was arrested an unknown number of years ago as a result of information provided by Ms. Poston – does not suggest that Juror Poston recognized him, responded untruthfully to questions during voir dire, or was biased. Petitioner in fact conceded in state court that just as he did not recognize Juror Poston during voir dire or jury selection, "[i]t is possible that at the time of voir dire Juror Poston may not have recognized the defendant from the former arrest." (Ex. K, p. 228, ECF at p. 1009 ¶ 6). Petitioner attempts to overcome this deficiency by arguing that because <u>he</u> later recognized <u>Poston</u>: "it is unfathomable that . . . Poston would fail to later connect the

case before her with her and the Defendant's past history." (*Id*.). Petitioner's conclusory, speculative assertion does not establish a viable claim of juror bias or misconduct .

The state court's rejection of petitioner's ineffective assistance claim was not contrary to *Strickland*, was not an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two     <u>"Ineffective Assistance of Counsel Based on Affirmative Misadvice Regarding Right to Call Witnesses and Right to Testify"</u> (Doc. 1, p. 4)

Ground Four     <u>Ineffective Assistance of Counsel for "Fail[ing] To Call John Harvard to Testify for the Defense"</u> (Doc. 1, p. 5)

Petitioner alleges in Ground Two that prior to trial, defense counsel advised him not to call any witnesses or testify in his own defense, so the defense would enjoy the benefit of first and last closing argument and so the State would be prohibited from disclosing to the jury the nature of petitioner's prior convictions. (Doc. 1, continuation pages 4(B), ECF pp. 9-10). Petitioner alleges that he learned after trial that both of counsel's strategies were "patently unreasonable in that, they both were based upon affirmative misadvice." (*Id*., ECF p. 10). Petitioner states that contrary to counsel's advice, Florida law provided that the State was entitled to the initial and rebuttal closing arguments regardless of whether the defense offered any evidence. (*Id*., ECF p. 10). Petitioner does not explain why counsel's advice on the matter of petitioner testifying was erroneous, except to suggest that petitioner's testimony (or lack thereof) would not have affected the order of closing argument. Petitioner asserts that but for counsel's misadvice, he would have testified and would have

insisted on calling John Harvard to impeach the credibility of prosecution witness William West.  According to petitioner, Harvard would have testified to "oral and written communications between the petitioner and William West while all three men were held in custody."  (*Id*., ECF p. 11).

Petitioner alleges in Ground Four that he told defense counsel he wanted John Harvard to testify for the defense.  According to petitioner, Harvard passed notes between petitioner and prosecution witness William West while the three men were in jail.  Petitioner says Harvard would have seen West's admission in one of the notes that he lied to law enforcement when he implicated petitioner in the crimes.  (Doc. 1, continuation pages 4(D), ECF pp. 18-19).

Respondent argues that Ground Two "is procedurally barred or turns on a state law matter not cognizable in federal habeas" (doc. 17, p. 9), because:

> When the postconviction court denied relief, it did so with prejudice to the extent Lewis' "claims 2, 3, and 6 are still facially of [sic] legally insufficient" despite opportunity to amend (Ex. L, p. 434-5).  The First DCA affirmed without opinion  (Ex. O).
>
> By affirming the postconviction court's denial of relief without an evidentiary hearing, the First DCA inherently determined such denial was a correct application of Fla.R.App.P. 9.141.  This is purely state law matter for which this court cannot grant relief.  *See* Staley v. Sec. DOC, 2008 WL 2385488, 10 (M.D.Fla. June 9, 2008) (unpub.)  ("The state appellate court's affirmance of the summary order denying postconviction relief establishes as a matter of state law that Staley's claims were either insufficient on their face to state a claim for relief or were conclusively refuted by the record.  Thus, Staley has no recourse . . . in this Court.").

(Doc. 17, p. 9).  Respondent's reliance on *Staley* is misplaced.  In *Staley*, the federal habeas petitioner presented the following claim:  "The Trial Court Erred in Failing

to Grant the Petitioner a Postconviction Evidentiary Hearing Based on Ineffective Assistance of Counsel." *Staley v. Sec'y Dep't of Corr.*, 2008 WL 2385488, at *3 (M.D. Fla. June 9, 2008). Mr. Staley argued that the postconviction court's summary denial of his claims, and the appellate court's affirmance, conflicted with United States Supreme Court precedent. *Staley*, 2008 WL 2385488, at *9 (M.D. Fla. June 9, 2008). The Middle District applied the longstanding principle that a prisoner's challenge to the process afforded him in a state postconviction proceeding does not constitute a cognizable claim for habeas corpus relief, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Carroll v. Sec'y, DOC, Fla. Attorney Gen.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (holding that habeas petitioner's claim, that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing, did not state a claim on which a federal court may grant habeas relief); *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (explaining that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention."). The Middle District ruled that Mr. Staley "has no recourse to challenge the propriety of the trial court's summary denial of his postconviction claims." *Staley*, at *10.

The claim presented here is a constitutional challenge to petitioner's conviction based on a claim of ineffective assistance of trial counsel. Petitioner is not raising

a due process challenge to the process afforded him in his state collateral proceeding. Respondent's "procedural bar" and "state law matter" defenses should be rejected.

Respondent alternatively addresses the merits by stating that he "relies on the State's response to grounds two and six (Ex. L, p. 316-18, 320-1), and the postconviction court's adoption of that response (Ex. L, p. 433-5)." (Doc. 17, p. 9) (citing the State's response submitted in petitioner's Rule 3.850 proceeding).

By adopting the State's response, the state court concluded that petitioner failed to establish deficient performance and prejudice, because the record refuted his assertions that: (1) counsel misadvised him, (2) counsel's alleged misadvice caused him not to testify or offer any evidence and (3) he would have called John Harvard had defense counsel not misadvised him and had counsel performed an adequate pre-trial investigation of the note-passing issue. (Ex. L, pp. 316-18, 320-21). The state court's findings and conclusions are reasonable.

Petitioner alleged in state court that trial counsel's advice that petitioner not call any defense witnesses was based on counsel's failure to "stay[ ] current" regarding the 2007 amendments to Florida Rule of Criminal Procedure 3.250 and Florida Rule of Criminal Procedure 3.381. (Ex. K, pp. 229-230). Petitioner's trial was held on June 7, 2007. One month prior to that, on May 3, 2007, the Florida Supreme Court amended Rule 3.250 to eliminate that portion of the rule that provided the defense with the right to concluding closing argument if the defense offered no evidence at trial other than the defendant's own testimony. *See* Fla. R. Crim. P. 3.250; *In re Amendments to the Fla. Rules of Criminal Procedure – Final Arguments*, 957 So.2d 1164 (Fla. 2007). The Florida Supreme Court also added Rule 3.381, which provided the prosecuting attorney with the right to make an initial closing

argument and, if the defense presented a closing argument, a rebuttal closing argument. Fla. R. Crim. P. 3.381; *In re Amendments to the Fla. Rules of Criminal Procedure – Final Arguments*, 957 So.2d 1164 (Fla. 2007). Petitioner states that counsel was not aware of the amendments, and that her advice not to call any witnesses was based on her erroneous belief that the defense would enjoy first and last closing argument.

The state court found, reasonably, that defense counsel was aware of the Rule amendments, as evidenced by her accurate statement of the law during the charge conference. (Ex. C, p. 119 ("My understanding is that the State goes first, then the Defense and then the State has the last.")). Defense counsel's statement, made after the defense rested without offering any evidence, establishes that defense counsel was <u>not</u> under the mistaken impression that the defense would have first and last closing argument. Petitioner was present at the charge conference and did not question counsel's statement or the order of closing argument, and made no indication that the order of closing argument was contrary to what he expected. The state court's finding that defense counsel did not provide erroneous advice about the order of closing argument is presumed correct. Petitioner has not rebutted that finding with clear and convincing evidence to the contrary.

The state court further found, reasonably, that the record refuted petitioner's assertion that he intended to call defense witnesses but was dissuaded by counsel's misadvice concerning the order of closing argument. After the State rested, the trial court inquired of defense counsel whether the defense was going to call any witnesses. (Ex. C, p. 108). Defense counsel stated that the defense might recall Investigator Lorenz but that she and petitioner were going to discuss the matter

during lunch recess.  (*Id*.).  After the parties returned, defense counsel stated that the defense would not call any witnesses.  (*Id*., p. 109).  Petitioner affirmed under oath that he did not know of any witnesses he could call to testify on his behalf:

> THE COURT:  Ms. Bytell has also stated that you do not wish to call any witnesses during your case in chief.  Is that what you feel like also is in your best interest?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  You don't have any witnesses that you've told her to call here today that aren't here to testify, correct?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  And you don't know of any witnesses here at this time that you can call to testify for you?
>
> THE DEFENDANT:  No, sir.

(Ex. C, pp. 110-11).

After trial and prior to sentencing, petitioner expressed his dissatisfaction with defense counsel's services.  Petitioner accused trial counsel of not calling witnesses he desired her to call.  (Ex. E, p. 6).  The trial court directed petitioner to identify the witnesses.  Petitioner identified only one, Herschel Cotton.  (*Id*.).  Petitioner did not identify John Harvard, the witness petitioner now says he told counsel to call concerning the alleged note from William West that would have impeached West's credibility.  The trial court placed defense counsel under oath and asked her to respond to petitioner's allegations.  Defense counsel testified that petitioner gave her the name of one witness he desired to call, Herschel Cotton, and that petitioner told her the information he expected Cotton to provide.  (Ex. E, p. 8).  Defense counsel

interviewed Mr. Cotton and determined that Cotton's testimony would not be helpful to the defense. (*Id*.). Defense counsel testified with regard to the note written by William West, that the only information petitioner gave her with regard to the note was that Mr. West wrote a note to petitioner stating that he (West) lied in his deposition testimony the day prior. Defense counsel investigated the only source of information petitioner gave her – Mr. West – by speaking to West about the alleged note. Mr. West told counsel not only that he did not give petitioner a note, but also that he did not say the things petitioner attributed to him. Petitioner gave counsel no other information (or potential witnesses) with regard to the alleged note. (*Id*., p. 8).

In light of the foregoing, the state court concluded, reasonably, that the decision not to call defense witnesses was not the product of counsel's mistaken belief or misadvice concerning the order of closing argument. The decision was based on counsel's reasonable decision, made after conducting a reasonable pre-trial investigation and consulting with petitioner, that there was no defense witness who could provide helpful testimony.

As to petitioner's specific assertion in Ground Four that counsel was deficient for failing to call John Harvard to testify, petitioner states that on the day before trial he informed counsel that John Harvard was available and would testify about the alleged notes passed between petitioner and William West. (Ex. K, p. 240; Doc. 1, continuation page 4(d), ECF p. 18). Petitioner states that Harvard's testimony would have impeached William West's testimony and established that West wrote petitioner a note explaining that he (West) lied and told Investigator Lorenz petitioner committed the crime because Lorenz led West to believe that petitioner implicated him (West) in the crime. (*Id*.). Petitioner states that counsel's testimony during the

pre-sentencing hearing that she investigated the note by talking to William West is an admission that she failed to investigate John Harvard. (*Id*., ECF p. 19).

The state court found, reasonably, that petitioner gave counsel the name of only one proposed witness, Herschel Cotton. This finding is supported by the sentencing transcript in which petitioner was asked to name the witnesses he told defense counsel to call, and petitioner identified only Mr. Cotton. (Ex. E, p. 6). Petitioner's assertion that he also told counsel to interview and call John Harvard is refuted by petitioner's own testimony as well as trial counsel's testimony. Petitioner described the information he provided counsel concerning the alleged note from West, and did not mention Mr. Harvard. (Ex. E, pp. 6-7). Defense counsel also testified to the information petitioner provided concerning the note. The only witness petitioner identified was Mr. West. (*Id*., p. 8). The state court concluded, reasonably, that given the information petitioner communicated to counsel, counsel performed reasonably with regard to the note and petitioner's proposed witness (Herschel Cotton). Counsel did not perform deficiently for failing to investigate or call John Harvard. (*Id*., p. 9). *See, e.g. Chandler,* 218 F.3d at 1324 (11th Cir. 2000) ("The reasonableness of a trial counsel's acts, including lack of investigation . . . depends critically upon what information the client communicated to counsel.") (internal quotation marks omitted); *see also Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate.").

As to petitioner's decision not to offer his own testimony, the state court reasonably found that petitioner's own sworn statements in his amended Rule 3.850 motion refuted his claim that counsel's erroneous advice concerning the order of

closing argument or the State's ability to inquire as to petitioner's prior convictions, caused him not to testify.  Petitioner admitted in his amended Rule 3.850 motion that he knew that the offering of his own testimony would not affect the order of closing argument.  (Ex. K, p. 230 ¶ 1).  Petitioner also admitted in his amended Rule 3.850 motion that he agreed with counsel's strategy that he should not testify due to his prior criminal history.  (*Id.*, p. 230 ¶ 2 ("Defendant understood after his counsel had explained to him that if he had taken the witness stand the chances were very high that the State would confront him in front of the jury of the fact that he had numerous other convictions. . . . Defendant agreed with counsel. . . ."));  *see also* Fla. Stat. § 90.610(1) (providing that a party may attack the credibility of a witness by evidence that the witness has been convicted of a felony or a crime involving dishonesty); *Fotopoulos v. State*, 608 So.2d 784, 791 (Fla. 1992) (the general rule for impeachment by prior convictions is that the State is restricted to asking a witness if he or she has been previously convicted of a crime, and if so, the number of times)). In addition to petitioner's admissions, petitioner made the following sworn statements at trial outside the presence of the jury:

> MS BYTELL [defense counsel]:  Mr. Lewis is going to exercise his right to remain silent during this trial.
>
> THE COURT:  Mr. Lewis, I need for you to raise your right hand for me, please.
>
> (DEFENDANT SWORN)
>
> . . . .
>
> THE COURT:  Mr. Lewis, your attorney has told me that you have decided not to testify.  Is that what you wish to do?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you feel like that's – that's the decision that you've made based on discussions with your attorney, correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that you have the independent right to testify and that if Ms. Bytell [defense counsel] advised you not to testify you would still have the right to testify; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  And you're making that statement on your own?  You haven't been forced or coerced in any way to do that?

THE DEFENDANT:  No, sir.

THE COURT:  Certainly you understand that if you wanted to testify today you  woudl be allowed to testify before this jury; is that correct?

THE DEFENDANT:  Yes, sir.

(Ex. C, pp. 110-11).  Petitioner has not established that "no competent counsel" would have advised him not to take the stand, *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000), particularly because the State would have challenged petitioner's credibility on cross-examination and the jury would have learned that petitioner had several prior felony convictions.  *See, e.g., Jones v. Sec'y, Dep't of Corr.*, 2012 WL 3641549, at *3 (11th Cir. Aug. 24, 2012) ("There is, at the very least, a reasonable argument that Jones' counsel was not deficient for advising Jones not to take the stand. . . . He cannot establish that 'no competent' counsel would have advised him not to take the stand, particularly because the State would have

challenged Jones' credibility on cross-examination and the jury would have learned that he had five prior felony convictions.") (citation omitted).

The state court's rejection of the petitioner's claims raised in Grounds Two and Four was not contrary to *Strickland*, was not an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two or Four.

Ground Three        "Ineffective Assistance of Counsel for Failing to Object to Prosecutorial Misconduct Amounting to Fundamental Error."

Petitioner's final claim is that counsel was ineffective for failing to object to the prosecutor's statements during closing argument that certain evidence was "uncontroverted", and to the prosecutor's vouching to the truthfulness of prosecution witnesses' testimony.  (Doc. 1, continuation pages 4(c), ECF pp. 15-17).  The parties agree that petitioner raised this claim in his Rule 3.850 motion as Claims Four and Five, and that the state court imposed a procedural bar, concluding that petitioner's claims of  improper remarks during closing argument should have been raised on direct appeal and were procedurally barred from review in a postconviction proceeding.  (Ex. L, pp. 319-20).  Respondent concedes that the imposition of that procedural bar was "plainly incorrect" (doc. 17, p. 11) and was not an adequate basis to deny relief, because petitioner's claim – that trial counsel was ineffective for failing to object – was not a direct appeal issue.  Respondent contends that even giving petitioner the benefit of *de novo* review, petitioner is not entitled to federal habeas relief because his claim is without merit.

Petitioner faults counsel for failing to object when:  (1) the prosecutor improperly described as "uncontroverted" the theft of the flatbed truck from JCI, Donald Hanish's testimony, and petitioner's admission to stealing the truck; (2) the

prosecutor improperly described William West's and Cathy West's testimony as having "matched" with regard to petitioner pouring oil all over the front seat of the truck and with regard to them both hearing petitioner confess to stealing the truck and setting it on fire, and when the prosecutor improperly urged the jury to "tie it all together and look at the fact that this is uncontroverted"; (3) the prosecutor in rebuttal "mocked" the defense's challenge to the credibility of prosecution witnesses William and Cathy West, and "led the jury to believe" that Cathy West's testimony corroborated her husband's testimony even though the State was aware that the defense impeached Cathy West's testimony during a proffer outside the presence of the jury and even though William West testified that no one (even his wife) was with him when petitioner confessed to stealing and burning the truck; and (4) the prosecutor improperly vouched for the truthfulness of Fred and Linda Cannon, and Donald Hanish. (Doc. 1, continuation pages 4(c); ECF pp. 16-17). Petitioner claims that the prosecutor's comments were objectionable because they "improperly shifted the burden of proof to the defense, implying to the jury that the Defendant was required to present evidence/testimony on his own behalf." (*Id*.).

Petitioner's theory underlying his claim of ineffective assistance rests on the assumption that the prosecutor's comments were improper. Because this assumption is without any basis in reality, petitioner can show neither deficient performance nor resulting prejudice.

During initial closing argument, the prosecutor did use the term "uncontroverted" several times. (Ex. C, pp. 122-23, 125, 127). The term, however, was always used in reference to the facts in evidence, to show the strength of the State's case, or, implicitly, inferences the jury could draw. *United States v. Bailey*,

123 F.3d 1381, 1400 (11th Cir. 1997) (a prosecutor may state conclusions drawn from the evidence during closing argument). The prosecutor's use of the term "uncontroverted" did not suggest that petitioner was required to present evidence or that petitioner had any burden to prove that anyone else committed the crimes. Petitioner has not demonstrated that counsel's failure to object to use of the term "uncontroverted" was objectively unreasonable.

Petitioner also fails to establish that he was prejudiced by counsel's failure to object. The prosecutor and defense counsel repeatedly reminded the jury that the State bore the burden of proof, and that petitioner did not have to prove anything (Ex. C, pp. 21, 22-24, 121, 129, 130-31), thereby dispelling any suggestion that petitioner was required to present any evidence or bear any burden of proof. Further, the trial court cured any suggestion that anyone but the State had the burden of proof by clearly instructing the jury on the following points: (1) to convict petitioner, the State was required to prove the elements of each crime beyond a reasonable doubt, (2) petitioner was not required to present evidence or prove anything, (3) if the jury had a reasonable doubt as to whether petitioner committed the offenses, they should find him not guilty, (4) a reasonable doubt as to guilt could arise from the evidence, conflict in the evidence, or lack of evidence, and (5) it was the jury's duty to decide what evidence was reliable. (Ex. C, pp. 147, 149, 150, 153). Petitioner has not shown that there is a reasonable probability – that is, a probability sufficient to undermine confidence in the outcome – that but for counsel's failure to object, the result of petitioner's trial would have been different.

As to the prosecutor's comment on the Wests' testimony "match[ing]" that was also a conclusion drawn from the evidence. William West testified that when he and

petitioner were in Tallahassee, petitioner confessed to him that he committed the crimes. (Ex. C, pp. 81, 84-85). William West testified on cross-examination that his wife Cathy West was not present when petitioner confessed in Tallahassee. (Ex. C, p. 86). When defense counsel asked Mr. West if his wife Cathy West was nearby when petitioner confessed, Mr. West stated that she was not present when petitioner confessed in Tallahassee, but that he and petitioner "done a lot of talking" while they drove with Cathy West from Tallahassee to another state, and that "she might have overheard a little bit of something here and there." (*Id*.). Cathy West testified that she was present in Tallahassee when petitioner confessed to the crimes, and described that she was standing beside her husband eavesdropping. (Ex. C, p. 89). Defense counsel asked Cathy West on cross-examination if it would surprise her that her husband just testified she was not present. (Ex. C, p. 90). Cathy West responded, "Yes, ma'am." (*Id*.). It was not improper for the State to rely on Cathy West's testimony to argue that the Wests' testimony matched (Ex. C, pp. 125-26), just was it was not improper for the defense to rely on William West's testimony to argue that it contradicted Cathy West's testimony. (Ex. C, p. 137). Both arguments relied on facts in evidence.

Finally, as to petitioner's claim of vouching, "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991). When an allegation of vouching is made, the court examines whether "(1) the prosecutor placed the prestige of the Government behind the witness by making explicit personal assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for

the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." *United States v. Rosin*, 263 F. App'x 16, 25 (11th Cir. 2008) (*citing United States v. Arias-Izquierdo*, 449 F.3d 1168, 1177-1178 (11th Cir. 2006)). When the prosecutor voices a personal opinion about witnesses' credibiltiy, but indicates this belief is based on evidence in the record, the comment is not improper. *See United States v. Garza*, 608 F.2d 659, 663 (5th Cir.1979) ("Except to the extent [the attorney] bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses.") (citations omitted). The prosecutor here commented with regard to Fred Cannon, Linda Cannon and Donald Hanish that their testimony was consistent with each other and consistent with other evidence presented to the jury. (Ex. C, pp. 123-25). The prosecutor's opinion was based on evidence in the case and was not improper vouching.

Petitioner has not established that defense counsel's failure to object to the prosecutor's comments was objectively unreasonable. Petitioner also fails to establish that he was prejudiced by counsel's failure to object. Petitioner is not entitled to federal habeas relief on Ground Three.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing

Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Michael D. Crews has been substituted as the respondent in this cause.

And it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentences in *State of Florida v. David Gene Lewis* in the Circuit Court for Walton County, Florida, Case No. 06-CF-479 be DENIED, and the Clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 16th day of January, 2013.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).